UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN LABORERS'
PENSION FUND, *et al.*,

      Plaintiffs,                        Case No. 13-cv-13727
                                                Hon. Matthew F. Leitman

v.

RITE WAY FENCE, INC., *et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF #36)

Plaintiffs Michigan Laborers' Pension Fund, *et al.*, brought this ERISA action against Defendants Rite Way Fence, Inc. ("Rite Way"), Marx Contracting, Inc. ("Marx"), Eugene Zapczynski ("Zapczynski"), and Mark Grundner ("Grundner") to recover fringe benefits allegedly owed under certain collective bargaining agreements. Plaintiffs moved for summary judgment against the Defendants, jointly and severally, in the amount of $204,894.53. (*See* the "Motion," ECF #36.) For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are employee fringe benefit funds subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*See* Declaration of Plaintiffs' Trustee Michael Nystrom, ECF #60 at ¶9.) Plaintiffs provide healthcare, pension, vacation, and other benefits to laborers in the road construction industry who meet certain eligibility requirements. (*See id.* at ¶¶4, 9.) Plaintiffs are funded by contributions from beneficiaries' employers pursuant to collective bargaining agreements. (*See id.* at ¶10.)

Rite Way and Marx build and install fencing and guardrails. (*See* Zapczynski Deposition, ECF #36-3 at 15, 21; Pg. ID 274, 276.) Zapczynski is the sole owner and officer of Rite Way. (*See id.* at 13-14, Pg. ID 274.) Zapczynski owns 60 percent of Marx; Grundner owns the remaining 40 percent. (*See id.* at 20, Pg. ID 275.) Zapczynski and Grundner are also officers of Marx. (*See id.* at 18-20, Pg. ID 275.)

Rite Way and Marx each entered into collective bargaining agreements with Plaintiffs. (*See* the "Agreements," ECF #36-5 and #36-6. *See also* the "Clarification," ECF #36-7.) The Agreements required Rite Way and Marx to make monthly contributions to Plaintiffs at defined hourly rates for covered work performed by covered employees. (*See* ECF #36-5 at 9-11, Pg. ID 394-96 and ECF #36-6 at 7-9, Pg. ID 415-17.)

Plaintiffs periodically audited Rite Way and Marx to ensure that the companies made all required benefit contributions. (*See* Declaration of Auditor Dawn Aldrich ("Aldrich"), ECF #36-2 at ¶9.) As relevant here, Plaintiffs audited Rite Way for the periods between September 2007 to March 2012 (the "First Rite Way Audit") and April 2012 to May 2013 (the "Second Rite Way Audit"). (*See id.* at ¶¶10-11, 22.) Plaintiffs audited Marx for the periods between September 2007 to April 2012 (the "First Marx Audit") and May 2012 to May 2013 (the "Second Marx Audit"). (*See id.* at ¶23.) The audits concluded that Rite Way and Marx had each failed to make required contributions for certain covered work performed by covered employees during the relevant time periods. (*See id.* at ¶¶11, 22-23.)

Plaintiffs filed this action on August 30, 2013. (*See* the Complaint, ECF #1.) Plaintiffs alleged that Defendants' failure to make required contributions (1) violated the Agreements and ERISA §§ 1132(a)(3) and 1145, and (2) breached Defendant's fiduciary duties to Plaintiffs in violation of ERISA §§ 1104(a)(1), 1103(c)(i). (*See id.* at ¶¶27-40.)

Plaintiffs now seek summary judgment in the amount of $204,894.53, representing Rite Way's and Marx's unpaid benefit contributions, interest, audit assessments, and audit costs. (*See* Mot. at 1, Pg. ID 210.) Plaintiffs seek judgment against each Defendant jointly and severally. (*See id.*) Plaintiffs contend that Rite Way and Marx are each liable for the other's unpaid contributions and associated

3

costs because they are alter egos and/or operate as a single employer. (*See id.* at 17-21, Pg. ID 238-42.) Plaintiffs further argue that Zapczynski and Grundner are personally liable because they operated Rite Way and Marx without regard to corporate formalities and with little separation between corporate and personal finances. (*See id.* at 21-25, Pg. ID 242-46.)

The Court heard oral argument on Plaintiffs' Motion on March 3, 2015. (*See* Hearing Transcript, ECF #51.) For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion.

## <u>GOVERNING LEGAL STANDARD</u>

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the

4

evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

### 1. Plaintiffs Are Entitled to Summary Judgment Against Rite-Way as to Unpaid Contributions that Rite Way Has Admitted Owing and as to Associated Costs and Fees, But Plaintiffs Are Not Entitled to Judgment as to The Remainder of Their Claimed Damages Against Rite-Way

Plaintiffs contend that they are entitled to judgment as a matter of law against Rite-Way in the amount $195,546.71. (*See* Mot. at 5, Pg. ID 226. *See also* Aldrich Decl. at ¶¶11, 22.) This amount includes $113,856.54 in unpaid benefit contributions for the period covered by the First Rite Way Audit, plus $24,106.55 in interest; $24,106.55 in audit assessments; and $14,198.72 in audit costs associated with those unpaid contributions. (*See* Mot. at 5, Pg. ID 226. *See also* Aldrich Decl. at ¶11.) The amount also includes $15,088.87 in unpaid benefit contributions for the period covered by the Second Rite Way Audit, plus $2,094.74 in interest and $2,094.74 in audit assessments associated with those unpaid contributions. (*See* Mot. at 5, Pg. ID 226. *See also* Aldrich Decl. at ¶22.)

Rite Way has admitted that it owes Plaintiffs unpaid benefit contributions in the amount of $82,017.08 for the period covered by the First Rite Way Audit. (*See* the "Stipulated Order Partially Resolving Plaintiffs' Claims," ECF #31 at ¶3. *See also* Tr. at 18, Pg. ID 2539.) Rite Way further concedes that it owes $17,455.51 in interest and $17,455.51 in audit assessments on the unpaid contributions that it has

5

admitted.  (*See* Tr. at 18-19, Pg. ID 2539-40.)  Thus, there is no dispute that Rite-Way owes Plaintiffs at least $116,928.10.

Rite Way argues, however, that it does not owe Plaintiffs the entire $14,198.12 in audit costs for the First Rite Way Audit.  Rite-Way says these costs should be "prorated" because it has acknowledged liability for only a portion of the unpaid contributions that Plaintiffs allege are due for the period covered by the First Rite Way Audit.  (*Id.*)  The Court disagrees.  "[T]he fact that Plaintiffs may be entitled to less than they originally requested does not automatically require a proportional reduction in … fees and costs."  *Operating Eng'r Local 324 Health Care Plan v. Dalessandro Contracting Group, LLC*, No. 10-11256, 2012 WL 4513594, at *4 (E.D. Mich. Oct. 2, 2012) (declining to reduce attorneys' fees).  Rite Way has admitted liability for the substantial majority of the unpaid contributions allegedly due for the First Rite Way Audit.  And Rite Way has not shown any correlation between the amount of benefit contributions that it failed to pay and the audit costs it seeks to avoid.  In other words, Rite Way has not established that Plaintiffs' audit costs would have been lower if Rite Way had failed to pay only $82,017.08 of benefit contributions (rather than $113,856.54, as Plaintiffs claim).  Moreover, there is no indication – and Rite Way has not argued – that Plaintiffs performed unnecessary audits or that the auditor's fees or hours were

6

excessive.   Under these circumstances, the Court concludes that Plaintiffs are entitled to the full amount of their claimed audit costs.

Accordingly, with respect to the First Rite Way Audit, Plaintiffs are entitled to judgment against Rite-Way in the amount of $131,126.22 ($82,017.08 in unpaid contributions, plus $17,455.51 in interest; $17,455.51 in audit assessments; and $14,198.12 in audit costs).  But Plaintiffs are not entitled to judgment as a matter of law for any additional amounts with respect to the First Rite Way Audit. Simply put, there are disputed issues of fact as to Plaintiffs' calculation of the remaining unpaid contributions they seek for the First Rite Way Audit.  At oral argument, the Court identified confusion in Plaintiffs' calculations and offered Plaintiffs an opportunity to submit supplemental briefing to try to resolve some of the factual issues as to their calculation of damages.  (*See* Tr. at 29-30, Pg. ID 2550-51.)  Plaintiffs submitted a supplemental brief (*see* ECF #52), but their new calculations and arguments do not resolve the confusion to the Court's satisfaction. Thus, Plaintiffs are not entitled to judgment as a matter of law for (1) allegedly-unpaid benefit contributions for the First Rite Way Audit over and above the $82,017.08 in unpaid contributions admitted by Rite-Way, or (2) any interest and/or audit assessments associated with the allegedly-unpaid additional amounts.

Nor are Plaintiffs entitled to judgment as a matter of law for any amounts with respect to the Second Rite Way Audit. Rite Way contends that the audit (1) incorrectly includes Rite Way employees who are not "covered employees" under the Agreements, and (2) fails to demonstrate that certain work hours performed by Rite Way employees are "covered work" under the Agreements. (*See* the Second Rite Way Audit, ECF #36-14.) Plaintiffs respond that in preparing the audit, Plaintiffs' auditor used internal Rite Way documents that coded each of the relevant employees as "covered employees" and represented that all work performed in certain zones was "covered work." (*See* Aldrich Supplemental Declaration, ECF #50-10 at ¶6.) Rite Way counters that (1) Plaintiffs' previous audits of Rite Way have acknowledged that the employees in dispute were not "covered employees," and (2) Plaintiffs' auditor misinterpreted Rite Way's internal documentation regarding geographic zones. (*See* Tr. at 36-39, Pg. ID 2557-60; *see also* ECF #45-16.) Taking this evidence in the light most favorable to Rite Way, there are genuine issues of fact as to Plaintiffs' entitlement to the amounts claimed for the Second Rite Way Audit. Accordingly, Plaintiffs have not established their entitlement to a judgment against Rite-Way in any amount over $131,126.22.

## 2. Plaintiffs Are Entitled to Summary Judgment Against Marx in the Amount of $9,347.82

Plaintiffs also contend that they are entitled to judgment as a matter of law against Marx for sums identified in the First Marx Audit and Second Marx Audit.

8

Plaintiffs acknowledge that Marx has already paid all of the delinquent benefit contributions and audit assessments due for the period covered by the First Marx Audit.  (*See* Mot. at 6, Pg. ID 227.  *See also* Aldrich Decl. at ¶25.)  However, Plaintiffs argue that Marx still owes $3,871.89 in interest and $983.83 in audit costs for the First Marx Audit.  (*See* Mot. at 6, Pg. ID 227.  *See also* Aldrich Decl. at ¶25.)  Plaintiffs further argue that Marx owes $3,194.30 in unpaid benefit contributions for the period covered by the Second Marx Audit, plus $366.90 in interest; $366.90 in audit assessments; and $564.00 in audit costs associated with those unpaid contributions.  (*See* Mot. at 7, Pg. ID 228.  *See also* Aldrich Decl. at ¶26.)

Marx counters that Plaintiffs' claim as to the First Marx Audit is barred by an agreement between the parties.  (*See* Response Brief, ECF #45 at 19, Pg. ID 1803.)  Specifically, Marx insists that when it agreed to pay the delinquent benefit contributions and audit assessments for the First Marx Audit, Plaintiffs agreed not to pursue interest and audit costs.[1]  (*See id.*)  But Marx has cited *no evidence* that Plaintiffs ever made such a promise.  To the contrary, it appears that Plaintiffs

---

[1]  The parties appear to disagree about which categories of debt Marx has already paid with respect to the First Marx Audit.  Plaintiffs assert that Marx has paid $3,871.89 in audit assessments but has not paid $3,871.89 in interest.  (*See* Mot. at 6, Pg. ID 227.  *See also* Aldrich Decl. at ¶¶24-25.)  Marx contends that it has paid interest, but not audit assessments.  (*See* Resp. Br. at 19, Pg. ID 1803.)  However, there is no dispute that the amount in controversy with respect to the First Marx Audit is $4,855.72 ($3,871.89 in either interest or audit assessments, plus $983.83 in audit costs).

9

expressly refused to enter such an agreement.  Indeed, when Marx asked Plaintiffs to waive the interest and audit costs for the First Marx Audit, *Plaintiffs expressly denied the requested waiver* and insisted that Marx pay the interest and audit costs. (*See* ECF #50-16 and #50-17.)  Marx also argues that Plaintiffs did not pursue interest and audit costs in a prior settlement between the parties regarding unpaid contributions not at issue in this action (*see* ECF #36-71), but that settlement does not prevent Plaintiffs from pursuing interest and audit costs here.  Thus, Marx owes $4,855.72 for the time period covered by the First Marx Audit ($3,871.89 in either interest or audit assessments, plus $983.83 in audit costs).

As to the Second Marx Audit, Marx initially argued that that there was a question of fact as to (1) whether the work hours identified in the audit are "covered work" pursuant to the Agreements, and (2) whether Marx therefore owes contributions for those hours.  (*See* Resp. Br. at 20, Pg. ID 1804.)  Marx noted that the Second Marx Audit does not attribute employee work hours to particular projects and, thus, it is unclear whether the work is "covered work."  In response, Plaintiffs' auditor attested that virtually all of Marx's projects are "covered work." (*See* Aldrich Suppl. Decl. at ¶8.)   Plaintiffs argued that it was therefore unnecessary to identify specific projects in order to establish that Marx owes

10

contributions for the claimed hours.[2]  (*See* Reply Brief, ECF #50 at 4-5, Pg. ID 2080-81.)  At oral argument, Marx conceded that the work hours identified in the Second Marx Audit were "covered work."  (*See* Tr. at 45, Pg. ID 2566 ("I would be hard pressed to say that they weren't [covered] projects").)  In light of this admission and the auditor's declaration, the Court concludes that Marx owes $4,492.10 for the time period covered by the Second Marx Audit ($3,194.30 in unpaid benefit contributions; $366.90 in interest; $366.90 in audit assessments; and $564.00 in audit costs).

Accordingly, Plaintiffs are entitled to judgment against Marx in the amount of $9,347.82 ($4,855.72 for the time period covered by the First Marx Audit and $4,492.10 for the time period covered by the Second Marx Audit).

## 3. Rite Way and Marx are Jointly and Severally Liable for Plaintiffs' Damages in this Action Because They Are Alter Egos

Employers that are alter egos of one another are jointly and severally liable for one another's unpaid ERISA contributions and associated fees and costs.  *See, e.g., Flynn v. R.C. Tile*, 353 F.3d 953, 959 (D.C. Cir. 2004) and *Plumbers Local 98 Defined Benefit Fund v. Wolf Mech., Inc.*, No. 06-12005, 2007 WL 4326924 (E.D. Mich. Dec. 10, 2007).  Employers are alter egos if they "have substantially

---

[2]  Plaintiffs also note that Marx paid all delinquent contributions claimed in the First Marx Audit, even though that audit did not identify the specific projects for contributions that Plaintiffs claimed were due.  (*See* Reply Brief, ECF #50 at 5, Pg. ID 2081.  *See also* Aldrich Suppl. Decl. at ¶8.)

identical management, business, purpose, operation, equipment, customers, supervision and ownership." *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990). The alter ego analysis "should be flexible." *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 581 (6th Cir. 1986). Thus, "no one element [is] a prerequisite to imposition of alter ego status; rather, all the relevant factors must be considered together." *Id.* at 582 (internal citation omitted).

Plaintiffs argue that Rite Way and Marx are jointly and severally liable as alter egos. As an initial matter, Plaintiffs note that in 2010, in a prior case between the parties, Rite Way and Marx admitted that they were "alter egos of each other and a single employer for the purposes of th[at] case." *See* "Stipulated Order," ECF #36, *Michigan Laborers' Pension Fund, et al. v. Rite Way Fence, Inc., et al.*, No. 08-12996 (E.D. Mich. Apr. 6, 2010). Plaintiffs contend that this admission is persuasive evidence of their alter ego status.

Plaintiffs also argue that the factual record in this case indicates that Rite Way and Marx operate as alter egos. Plaintiffs note that:

- Zapcynski is the sole shareholder and officer of Rite Way, while Zapcynski and Grundner are the sole shareholders and officers of Marx (*see* Zapczynski Dep. at 13-14, 18-20; Pg. ID 274-75);

- Rite Way and Marx are in the business of installing fence and guardrail (*see id.* at 15, 21; Pg. ID 274, 276);

- Rite Way and Marx perform this work solely within Michigan (*see* Grundner Dep., ECF #36-24 at 19-20, Pg. ID 694);

12

- Rite Way and Marx share the same headquarters in Sterling Heights and a storage yard in Rochester Hills (*see* Zapczynski Dep. at 21-26; Pg. ID 276-77);

- Rite Way and Marx use the same employees and, in particular, use the same foremen to supervise their projects (*see* Grundner Dep., ECF #36-24 at 21, 28; Pg. ID 695-96; *see also* "Payroll Audits," ECF #36-27 and #36-28);

- Rite Way and Marx share the same vehicles and equipment (*see id.* at 29-30, Pg. ID 697);

- Rite Way and Marx use the same accounting, tax, and legal professionals (*see* ECF #36-42 through #36-52);

- Marx makes substantial payments to Rite Way for "operational" and "administrative" costs (*see* ECF #36-36, #36-37, and #36-38);

- Rite Way pays Marx "management fees" (*see* ECF #36-40); and

- Rite Way appears to transfers a substantial amount of work to Marx in the form of subcontracts but the companies do not memorialize these transactions in written documents (*see, e.g.*, ECF #36-37 at 6, Pg. ID 1325; *see also* Zapczynski Dep. at 42, Pg. ID 281).

Plaintiffs also argue that Zapczynski and Grundner never intended for Rite Way and Marx to operate as distinct entities. (*See* Mot. at 9, Pg. ID 230.) Rather, Plaintiffs note that as Zapczynski admitted, he and Grundner incorporated Marx solely because they wanted to bid on Michigan Department of Transportation ("MDOT") projects and Rite Way did not satisfy certain MDOT eligibility criteria. (*See* Zapczynski Tr. at 26-27, Pg. ID 277.) Plaintiffs contend that these facts demonstrate that Rite Way and Marx satisfy the *Fullerton* test for alter ego status.

Rite Way and Marx counter that Plaintiffs have not demonstrated that they are alter egos.  Rite Way and Marx insist that their prior admission of alter ego status was solely "for the purposes of th[at] case" and, accordingly, has no bearing on this action.  (*See* Resp. Br., ECF #45 at 11, Pg. ID 1795.)  Rite Way and Marx also point out that they maintain separate checking accounts, file separate tax returns, prepare separate financial statements, and maintain separate payrolls.  (*Id.* at 10, Pg. ID 1796.)  Rite Way and Marx argue that although they shared some employees, each shared employee (1) was paid by the company on whose project the employee was working, and (2) received separate W-2 tax statements from Rite Way and Marx.  (*See id.* at 10-11, Pg. ID 1796-97.)  Further, the companies argue that there is no evidence that Zapczynski and/or Grundner created Rite Way and Marx as separate corporate entities in order to evade the obligations of a collective bargaining agreement, and that the absence of such evidence precludes a finding of alter ego status.  (*See id.* at 21, Pg. ID 1805.)

Even when viewing the evidence in the light most favorable to Rite Way and Marx, Plaintiffs have established that Rite Way and Marx are alter egos.  The companies' admission of alter ego status in 2010 is not dispositive here, but it certainly weighs in favor of the Court finding that the companies are alter egos. Indeed, Plaintiffs have not pointed to any changes in circumstances from 2010 to the present that would render obsolete Plaintiffs' prior admission that the two

companies were alter egos of one another and constituted a single employer.  More importantly, even when taken in the light most favorable to Rite Way and Marx, the evidence in the record demonstrates that Rite Way and Marx have substantially identical management, business, purpose, operation, equipment, supervision, and ownership.[3]  Although Rite Way and Marx correctly point out that there is no evidence that the companies were created as separate entities in order to avoid ERISA obligations, "[e]vidence, or lack thereof, of an employer's intent to evade the obligations of a collective bargaining agreement is merely one … factor[] to be considered and is not a prerequisite to the imposition of alter-ego status."  *Road Sprinkler Fitters Local Union No. 669 v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012).  Moreover, the companies' separate checking accounts, tax statements, and payroll are insufficient to overcome the many indicia of alter ego

---

[3]   Plaintiffs argue that Rite Way and Marx also have substantially identical customers.  Plaintiffs submitted voluminous and barely-legible customer lists in support of this argument.  (*See* ECF #36-31 and #36-32.)  The Court cannot conclude, on the basis of these exhibits, that the companies' customers were substantially identical.  Nonetheless, the companies have admitted "a degree of commonality" in their customers.  (*See* Response Br. at 11, Pg. ID 1795.) Furthermore, "no one element [is] a prerequisite to imposition of alter ego status," *Allcoast Transfer*, 780 F.2d at 582, and under all the relevant factors, considered together, Rite Way and Marx are alter egos.

status.  Accordingly, Rite Way and Marx are deemed to be alter egos and will be jointly and severally liable for all of Plaintiffs' damages in this action.[4]

**4. Plaintiffs Are Not Entitled to Summary Judgment on Zapczynski's and Grundner's Personal Liability**

"[T]here is a presumption that a corporation is a separate entity from its shareholders." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704 (6th Cir. 1988.)  Therefore, shareholders ordinarily are not liable for the debts of the corporation.  *See, e.g.*, *Olympic Forest Prods., Ltd. V. Cooper*, 148 Fed. App'x 260, 263 (6th Cir. 2005) (applying Michigan law).  However, a court may pierce the corporate veil and hold shareholders personally liable "if there are substantial reasons for doing so after weighing (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators." *Weinberger Homes*, 872 F.2d at 704 (internal punctuation and citation omitted).  "Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Id.* at 705 (internal citation omitted).

---

[4]  Because the Court deems Rite Way and Marx to be alter egos, the Court need not address Plaintiffs' alternative argument that Rite Way and Marx are single and/or joint employers.

Plaintiffs argue that there is substantial reason to hold Zapczynski and Grundner personally liable for the debts of Rite Way and Marx. Specifically, Plaintiffs contend that:

- Rite Way and Marx were undercapitalized when they were founded in 1993 and 2005, respectively (*see* Mot. at 8, Pg. ID 229);

- Rite Way and Marx have no corporate directors, no bylaws, and no stock certificates (*see id.* at 9, Pg. ID 230);

- Rite Way and Marx have never held any shareholder, officer, or director meetings (*see id.*);

- Rite Way has made large, unexplained payments to Zapczynski and has paid approximately $1.6 million toward Zapczynski's personal credit card account (*see* Mot. at 14, Pg. ID 235); and

- Zapczynski regularly transfers money to Rite Way and/or Marx. (*See id.* at 14-15, Pg. ID 235-36.)

Plaintiffs argue that failure to pierce the corporate veil under these circumstances would be unjust because Plaintiffs are obligated to pay certain benefits to their beneficiaries regardless of whether Rite Way and Marx make their required contributions. (*See id.* at 24, Pg. ID 245.)

Zapczynski and Grundner counter that piercing the corporate veil is unwarranted. They note that Rite Way and Marx each maintained books and records separate from their shareholders. (*See, e.g., see* ECF #45-18 through #45-24.) Zapczynski and Grundner further contend that Rite Way's allegedly-unexplained payments to Zapczynski and its payments on Zapczynski's credit card

17

were reimbursements for legitimate business expenses. (*See* Zapczynski Deposition Part II, ECF #36-4 at 162-63, Pg. ID 335-36.) Zapczynski and Grundner also argue that Plaintiffs have not shown that they had fraudulent intent. (*See* Resp. Br. at 23, Pg. ID 1807.) To the contrary, Zapczynski and Grundner note that Rite Way and Marx were both signatories to the Agreements and paid significant contributions to Plaintiffs pursuant to those Agreements. (*See, e.g.*, ECF #45-21 at 15, Pg. ID 1949 (reflecting payments to employee benefit plans) and ECF #36-25 and #36-26 (signature pages to Agreements).)

Viewing the evidence in the light most favorable to Zapczynski and Grundner, the Court does not find substantial reasons for piercing the corporate veil as a matter of law. Although Rite Way and Marx may have lacked certain corporate formalities, when viewed in favor of Zapczynski and Grundner, the evidence does not show that they so disrespected the separate entities of the corporations as to warrant veil piercing as a matter of law. Among other things, there are genuine issues of fact as to Plaintiffs' allegations that Zapczynski inappropriately commingled personal and corporate funds. Moreover, Plaintiffs have not shown that they would suffer injustice from recognition of the corporate entities for two reasons. First, although Plaintiffs allege that Rite Way and Marx were undercapitalized at the time of their formation, that allegation is not supported by the record when viewed in the light most favorable to Zapczynski and

18

Grundner.  Indeed, Zapczynski testified that Rite Way and Marx had few assets when they were formed, but there is no evidence that at that time the companies' liabilities exceeded their assets – or, indeed, that the companies had any liabilities at all.  (*See* Zapczynski Dep. at 37-38, Pg. ID 280.)  Second, even if Rite Way and Marx had been undercapitalized at the time of their formation, Plaintiffs have cited no evidence that Rite Way and Marx *currently* lack the funds to make them whole.[5]  To the contrary, the most current financial statements in the record before the Court appear to indicate that the companies have positive net equity.  (*See* ECF #36-40 and #36-41.)  The evidence, viewed in Defendants' favor, also fails to establish that Zapczynski and/or Grundner had any fraudulent intent.[6]  Accordingly, Plaintiffs are not entitled to summary judgment as to Zapczynski's and Grundner's personal liability.

---

[5]   At oral argument, Plaintiffs' alleged that Rite Way and Marx have told Plaintiffs that they intend to file for bankruptcy.  However, Plaintiffs have not cited any *evidence* that Rite Way and Marx are preparing to enter bankruptcy or are otherwise uncollectible.

[6]   The Court notes that the case for Grundner's personal liability, when the evidence is viewed in his favor, is exceptionally weak given that (1) Plaintiffs have not alleged that he commingled personal and corporate funds, and (2) it appears that Grundner did not play a significant role in the management of Rite Way.  Plaintiffs candidly acknowledged the comparative weakness of the claim against Grundner at oral argument.

## <u>CONCLUSION</u>

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF #36) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** to the extent that Plaintiffs' are entitled to judgment against Rite Way and Marx, jointly and severally, in the amount of $131,126.22.  In addition, Rite Way and Marx shall be jointly and severally liable for any additional damages that Plaintiffs establish in this action. The Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 24, 2015


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 24, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

20